Argued May 20, affirmed June 17, 1964

# MOWERY *v.* MOWERY
393 P. 2d 191

*Leo Levenson,* Portland, argued the cause for appellant. With him on the brief was Marvin S. Nepom, Portland.

*William E. Tassock,* Portland, argued the cause for respondent. With him on the brief were Barzee, Leedy & Tassock, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

PERRY, J.

The plaintiff brought this suit for a divorce from the defendant on the ground of extreme cruelty. She commenced her suit on the 17th day of September, 1962. On September 25, 1962, the parties agreed to attempt a reconciliation and sought marriage counseling. The reconciliation failed and on March 14, 1963, the plaintiff filed a supplemental complaint upon which the cause was tried. The defendant answered and also filed a cross-complaint seeking a divorce from the plaintiff upon the grounds of extreme cruelty.

From a decree dismissing defendant's cross-complaint and awarding a decree of divorce and the custody of the minor children of the marriage to the plaintiff, the defendant appeals.

The defendant's complaint of error is that there was insufficient evidence to establish the charge of extreme cruelty, or at least the parties are in pari delicto.

The record discloses the parties were married in Wisconsin in 1945; that they later moved to Oregon and have resided in their present home near Portland for approximately 10½ years. That five children were born to these parties, one child dying in infancy. Of the four living children, the oldest, a boy, is 16, and the youngest, a girl, is 3.

The residence was supplied with water from a well, and during the summer months the well was dry. Also, during the winter months when the well contained water it was hardly sufficient to meet the bathing and

laundry requirements of the family. It is evident this led to discord between the parties, but this, it appears, was not the real trouble.

The real difficulty seems to lie in the fact that the defendant displayed a total lack of love and affection toward the plaintiff. Plaintiff testified the defendant was seldom home; that he would stay out on many occasions all night without offering any explanation and, if she asked, he would tell her it wasn't any of her business. Plaintiff further testified that their home was two miles from a bus stop; that she wanted to learn to drive an automobile and defendant did not want her to learn; that a friend offered to teach her and did; that defendant then talked about accidents and criticized and laughed at her efforts.

Plaintiff also testified that defendant handled practically all of the finances and did not discuss their financial situation with her. Although he was earning approximately $9,000 per year, if she asked him for money for a coat she needed he would say he didn't have the money. If she asked for money to go some place, defendant would say: "You're not going any place and you don't need it." She testified that defendant did not take her any place except about once a year to a drive-in movie, and after someone told him he should take her out more, plaintiff testified, "he wouldn't take me to anything I was interested in," but he did take her to a wrestling match.

Plaintiff also testified that defendant criticized her because she didn't seem to make friends, telling her that no one wanted to make friends with her, that people didn't like her and were talking about her; that, when the telephone was out of order, he told her she was queer and imagining things. There is more

evidence of trickery defendant used for the purpose of upsetting the plaintiff's peace of mind. Plaintiff also testified as follows:

"When I agreed in September to try it again, I agreed because of the children and he agreed to certain things. Later he did not keep—he did a little bit about the money, but nothing else, and then in March he laughed at me and told me that he did not want a reconciliation, had not wanted one, he only wanted time to get back at me. Things were going to be his way or else. If I wanted to live on his terms, fine, but if I didn't he would accuse me of being mentally ill and take the children from me."

■ Certainly the words and actions of the defendant disclose no affection for his wife and no concern for her comfort, either physical or mental. This openly displayed attitude of the defendant was bound to cause the plaintiff great unhappiness and mental suffering. In our opinion, this constitutes extreme mental cruelty.

As to defendant's contention that the trial court should have found the parties in pari delicto, we have carefully examined the record and find nothing in the plaintiff's conduct that would in anywise justify the treatment she received from the defendant.

■ The defendant also contends that the trial court was in error in not considering the testimony of a marriage counselor to the effect that the plaintiff was a highly emotional person and seemingly quite confused.

The defendant can gain little comfort from the foregoing statement. The counselor did not testify that this was and had been a condition existing throughout the marriage of the parties, but that it might or might not be a permanent situation.

Certainly, from what we have set out of the treatment accorded the plaintiff by the defendant, it is little wonder that the counselor found the plaintiff highly emotional and quite confused.

The decree of the trial court is affirmed.